UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SHALONDA SPRUILL, on behalf of :
herself and all others similarly :
situated :
:
v. : C.A. No. 09-292S
:
GARY ALEXANDER, in his official :
capacity as the Director of the Rhode :
Island Department of Human Services :

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on Plaintiffs' Motion for Award of Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988. (Document No. 20). In their Motion, Plaintiffs seek an award of attorneys' fees in the amount of $121,538.00, plus costs and expenses of $2,401.44. Id. at 3. Defendant filed an Objection. (Document No. 30). With the Court's approval, Defendant also filed a Supplemental Memorandum in Opposition (Document No. 36) to which Plaintiff replied (Document No. 37). A hearing was held on March 18, 2010.

The Motion for Award of Attorney's Fees and Costs has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. After listening to the arguments, reviewing the pleadings and performing independent research, this Court recommends that the Motion be GRANTED in part and that Plaintiffs be awarded $102,456.00 for their attorneys' fees and $2,401.44 for their recoverable costs and expenses.

**Background**

Plaintiffs filed their Complaint, a Motion to Certify Class, a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction on July 6, 2009. (Document Nos. 1, 2, 3 and 4). The Complaint alleges that Defendant failed to timely process food stamp applications pursuant to the requirements and procedures set forth in the Supplemental Nutrition Assistance Program and the Federal Food and Nutrition Act of 2008. Sections 4001 and 4002 of P.L. 110-246. (See, e.g., Document No. 1, ¶ 23). Plaintiffs brought their claims under 42 U.S.C. § 1983 and 7 U.S.C. § 2020. Plaintiffs' Complaint sought a declaration that Defendant's policies and procedures violated 7 U.S.C. § 2020, an injunction requiring Plaintiffs to comply with federal laws, and an award of costs and reasonable attorneys' fees under 42 U.S.C. § 1988. (Document No. 1 at p. 10). In their Amended Complaint filed on October 12, 2009 (Document No. 17), Plaintiffs brought their claims as a class.[1] The Amended Complaint was filed the same day as the parties' Stipulation and Order of Settlement (the "Order"). (Document No. 18). The Order was without prejudice to Plaintiffs' right to move for fees and costs pursuant to 42 U.S.C. § 1988. Id. at 11. District Judge Smith entered the Order on October 19, 2009.

**I.     The Award of Attorneys' Fees**

Plaintiffs seek an award of fees under 42 U.S.C. § 1988(b), the "Civil Rights Attorney's Fees Awards Act" ("the Act"). The Act provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

---

[1] Because the parties settled this case, the Court did not rule upon the Motions for Temporary Restraining Order, Preliminary Injunction or the Motion to Certify Class. (Document Nos. 2, 3, 4).

In the present action, the parties are at odds both concerning whether Plaintiff is a "prevailing party" and also whether the fees requested are "reasonable."

## A. Prevailing Party Status

In order to be deemed a prevailing party under the statute, Plaintiffs must demonstrate "a 'material alteration of the legal relationship of the parties,' with a sufficient 'judicial imprimatur on the change.'" Aronov v. Napolitano, 562 F.3d 84, 89 (1st Cir. 2009) citing Buckhannon Bd. & Care Home, Inc., v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-605 (2001). In Aronov, the First Circuit Court of Appeals considered an attorneys' fee claim under the Equal Access to Justice Act, a fee-shifting statute that contains the same "prevailing party" terminology as 42 U.S.C. § 1988. The First Circuit has also recently noted that "prevailing party" is a "legal term of art" and stated that the "concepts that shape the term apply broadly to the entire universe of federal fee-shifting statutes." Hutchinson v. Patrick, No. 10-1268, 2011 WL 540538, *3 (1st Cir. February 17, 2011). Accordingly, Aronov and Hutchinson guide the Court in this case. In Aronov, the First Circuit noted that the prevailing party analysis could be satisfied either where there is a judgment on the merits or a settlement made enforceable by a consent decree. Id.

In the present case, like Aronov, there was not a judgment on the merits. Thus, the determination of whether Plaintiffs can be deemed prevailing parties turns on the determination of whether the Order satisfies the standard for a prevailing party finding as set forth in Aronov. In Aronov, as in this case, the order at issue was not titled a "consent decree." However, in Hutchinson, the First Circuit instructs that "rather than look exclusively at the label attached to

a particular order, an inquiring court must consider 'whether the order contains the sort of judicial involvement and actions inherent in a court ordered consent decree.'" Hutchinson, 2011 WL at 540538 at *4. (citations omitted). The First Circuit has set forth a tripartite test that governs this case. Under that test, a settlement order can satisfy the "judicial imprimatur" standard when it (1) is a court ordered change in the legal relationship of the parties; (2) is judicially approved with regard to the merits of the case; and (3) provides for judicial oversight of the parties. Aronov, 562 F.3d at 90.[2]

In this case, the parties' settlement was not private, but instead was negotiated with the Court's assistance and ultimately memorialized in the Order entered by the Court. The Order provides that it is "subject to the approval of the Court pursuant to the Federal Rules of Civil Procedure." (Document No. 18 at p. 2). Given this, the Court is satisfied that the change in legal relationship was court ordered, and thus that the first prong of the test is satisfied.

Next, the Court considers the second prong, which requires judicial approval "vis a vis the merits of the case." The Court notes that the Order outlines Defendant's Obligations in Part II. The crux of Defendant's duties under Part II requires strict compliance with the federal food stamp timeliness provisions set forth in 7 U.S.C. § 2020. Defendant is also obligated to respond to Plaintiffs' requests for individualized reviews in three business days and to provide monthly monitoring reports to Plaintiffs. (Document No. 18, ¶ 9). Part III of the Order contains requirements for the Defendant to engage in mandatory "monitoring" of its compliance with Part

---

[2] The State devoted several pages of its Objection to the argument that an award of attorneys' fees should be denied under the "catalyst" test. (Document No. 30 at pp. 15-17). The First Circuit, however, has recognized that the Supreme Court has "rejected the 'catalyst' theory which had been accepted by many circuits, including this one." Aronov, 562 F.3d at 89. Accordingly, the catalyst theory is inapplicable to the Court's analysis.

II. All of these substantive aspects of the Order indicate that the Court necessarily considered the merits of the action when it entered the Order. Moreover, in this matter, the Court was privy to the parties' settlement negotiations and assisted the parties in reaching the settlement. Given these factors, the Court is satisfied that a sufficient appraisal of the merits occurred in connection with the entry of the Order as required to fulfill the second prong of the tripartite test.

Finally, the third prong considers judicial oversight. Paragraph 18 of the Order provides that the "Court shall retain jurisdiction...until fifteen (15) days after the provision of the ninth (9th) monthly monitoring report...at which time the Court's jurisdiction shall end and the claims against the defendant shall be deemed dismissed with prejudice." Id. at 10. In Hutchinson, the agreement provided that the District Court retained jurisdiction over the case and instructed that the case not be closed "pending compliance with the terms of the Agreement." 2011 WL 540538 at *2. The First Circuit stated that "[t]hese features distinguish the case at hand from the swath of cases in which a district court merely recognizes the fact of a settlement and dismisses the underlying action." Id. at *5. In Hutchinson, the First Circuit underscored its finding, stating "the mere fact that a settlement is subject to court approval does not supply the necessary ingredients for prevailing party status. It is the presence of continuing judicial oversight that pushes the ball across the goal line and thus suffices to give a settlement the required judicial imprimatur." Id. at *12, n.3 (emphasis in original). In the present case, as in Hutchinson, the Order's provision for the retention of the Court's jurisdiction is key to determining that the third prong of the test is satisfied.

Accordingly, the Court finds that the Order in this case involved the sort of judicial involvement typically found in a consent decree. This satisfaction of the tripartite test establishes that the Order in this matter "create[s] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Buckhannon, 532 U.S. at 604. Having determined that Plaintiffs meet the "prevailing party" standard, the Court must now consider what constitutes a reasonable fee in this case.

**B.      Reasonable Fee Analysis**

Although the Court has determined that Plaintiffs are prevailing parties, the Court maintains broad discretion in determining a reasonable fee amount. Boston's Children First v. City of Boston, 395 F.3d 10, 14 (1st Cir. 2005). Plaintiffs are required to submit sufficient documentation to support the hours and rates claimed in their fee request. See O'Rourke v. City of Providence, 77 F. Supp. 2d 258, 263 (D.R.I. 1999). Defendant, in turn, may submit countervailing evidence. Foley v. City of Lowell, 948 F.2d 10, 20-21 (1st Cir. 1991). If a plaintiff submits insufficient documentation or does not otherwise present evidence that the fee it seeks is reasonable, the Court may reduce the attorneys' fees awarded. O'Rourke v. City of Providence, 77 F. Supp. 2d at 263.

In determining what constitutes a reasonable fee, the Court starts by calculating a lodestar. See Lipsett v. Blanco, 975 F.2d 934, (1st Cir. 1992). A lodestar is "the base amount of the fee to which the prevailing party is entitled...." Id. The lodestar is calculated by "multiplying the number of hours productively expended by counsel times a reasonable hourly rate." Id. In determining the lodestar, the first step requires ascertaining the number of hours

spent by each attorney and then subtracting time that was "duplicative, unproductive, excessive, or otherwise unnecessary." Id. citing Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). Then, the Court must determine a reasonable hourly rate by "taking into account the 'prevailing rates in the community for comparably qualified attorneys.'" Id. (citation omitted). Finally, once the hours and the rate are determined, the fee is considered "reasonable" but can be subject to an upward or downward adjustment in certain circumstances. Id. In the present case, Plaintiffs request an award of attorneys' fees in the amount of $121,538.00, plus costs and expenses of $2,401.44. Plaintiffs' counsel submitted an array of supporting documentation including contemporaneous time records, their own affidavits, affidavits of disinterested counsel as well as citations to legal support for their claimed fees. Defendant's objection quarrels with essentially every aspect of the fees and costs claimed. After considering all of the material presented, the Court resolves the dispute as set forth below.

**1.      Hourly Rate**

First, the Court is tasked with ascertaining a reasonable hourly rate. Plaintiffs bear the burden of demonstrating that the rates charged are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Block v. Mollis, C.A. No. 09-047S, 2009 WL 2208107 *3 (D.R.I. July 22, 2009) quoting Blum v. Stenson, 465 U.S. 886, 895-896 n.11 (1984). To that end, Plaintiffs' counsel submitted contemporaneous time records, as well as their own individual declarations and the declarations of Attorneys Patricia Sullivan and John Dineen, local, disinterested counsel. (See Document Nos. 20, 21, 22, 23 and 24).

In setting a reasonable hourly rate, the Court typically looks to the "court's vicinage rather than in the lawyer's region of origin" however, in certain circumstances, an award of "out-of-town" rates is justified. Rhode Island Med. Soc'y v. Whitehouse, 323 F. Supp. 2d 283, 292 (D.R.I. 2004) (citation omitted). According to the First Circuit, an award of out-of-town rates is appropriate if "the complexities of a particular case *require* the particular expertise of non-local counsel," or "when the case is an undesirable one which capable attorneys within the forum community are not willing to prosecute or defend." Id. at 292 citing Williams v. Poulos, Nos. 94-2057, 94-2058, 1995 WL 281451 at *4 (1st Cir. May 12,1995). Plaintiffs' counsel includes a team of attorneys from the National Center for Law and Economic Justice ("NCLEJ") located in New York, New York. Attorneys Marc Cohan, Cary LaCheen and Mary Mannix seek reimbursement at "out-of-town" rates ranging from $350.00 to $375.00 per hour. Attorney Lynette Labinger, local counsel, seeks reimbursement for her fees at a rate of $290.00 per hour.

Defendant objects to the request for out-of-town rates, and seeks a reduction to $250.00 per hour for all of Plaintiffs' attorneys. Defendant points to the Court's decisions in Block, 2009 WL 2208107 and Walden v. City of Providence, Nos. 04-304A, 04-553A, 2008 WL 4613074 (D.R.I. Oct. 15, 2008) in support of his claim that a rate of $250.00 per hour is reasonable. (Document No. 30 at pp. 19-22). Defendant also submits the Affidavit of Marc DeSisto, Esquire, a local, disinterested attorney who opines that an hourly rate of $250.00 is "more consistent" with current rates in this District, and that out-of-town counsel was not required since Attorney Labinger is "extremely capable" and "well versed in matters of this nature." (Document No. 30-7 ¶¶ 7, 9). After a consideration of the arguments presented by both sides, the Court has

determined that an award of out-of-town rates is justified both because of the unique expertise of the attorneys from the NCLEJ as well as the unavailability of the most qualified local counsel.

As noted, Defendant argues that the NCLEJ rates "should be adjusted to the prevailing rates in Rhode Island." (Document No. 30 at p. 21). Plaintiffs, on the other hand, argue that they are entitled to New York City rates since "retention of outside counsel is reasonable in light of the complexities of this case and non-local counsel's applicable expertise." (Document No. 20-1 at p. 7). First, Plaintiffs point out that the local attorneys most knowledgeable about food stamp delays are the attorneys at Rhode Island Legal Services, yet they are legally prohibited from bringing a claim seeking class relief. (Document No. 20-1 at p. 10; Document No. 32-2 at ¶ 5) (Rhode Island Legal Services "could not file a class action lawsuit due to federal statutory and funding restrictions which prohibit it from filing, or participating as counsel in, class actions."). See also 45 C.F.R. §§1617.1 (2007). Moreover, they point to the NCLEJ's national experience in litigating food stamp delay cases, having pursued such litigation in several other federal courts. (Document No. 20-1 at p. 10). (See e.g. Bell v. Murphy, 3:09-cv-148 (N.D. Ind), Williston v. Eggleston, 04-civ-4454 (S.D.N.Y) and Martin v. Werner, 1:06-cv-00094 (W.D.N.Y)). Plaintiffs also note that the Food Stamp Act and its accompanying regulations are intricate and complex. Id. at 11.

Defendant attempts to rebut these arguments using only conclusory argument and the opinion of a local attorney who characterizes Attorney Labinger as "well-versed in matters of this nature" and "extremely competent." Attorney Labinger's competence is without question, but her capability as an attorney is a matter wholly separate from the two-pronged query

considering the unavailability of the most qualified local attorneys (Rhode Island Legal Services) as well as the unique expertise of the NCLEJ attorneys in cases involving these very issues. These two factors make the retention and reimbursement of non-local counsel reasonable.

Having determined that counsel is entitled to be awarded out-of-town rates, the Court is now required to determine if the out-of-town rates sought are in line with those prevailing in New York City for attorneys with commensurate experience and expertise. Plaintiffs cite numerous cases indicating that the rates sought are comparable to those awarded in other cases. (See Document No. 20-1 at p. 12). In Mugavero v. Arms Acres, Inc., No. 03 Civ. 05724 (PGG), 2010 WL 451045 *5 (S.D.N.Y. Feb, 9, 2010), for example, the District Court for the Southern District of New York noted that "consistent precedent...reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." (citation omitted). The rates requested in this case are in line with those cited in Mugavero and in the midrange for New York City attorneys. Plaintiffs out-of-town attorneys, Marc Cohan, Cary LaCheen and Mary Mannix, each have at least twenty years of experience as practicing attorneys. (Document No. 22 at ¶ 35, 36). Given their experience and the fact that the rates are in the range noted by other federal courts in their District, I find that the rates requested are in line with those prevailing in their community. Accordingly, the Court approves the out-of-town rates requested for Attorneys Cohan, LaCheen and Mannix.

Next the Court considers the disagreement concerning Attorney Labinger's hourly rate. Despite Defendant's argument which implies that the Court's recent rulings have set $250.00

as a de facto approved rate in this District, there is no bright-line rule as to the rate to be awarded an attorney in civil rights litigation. Instead, a case-by-case analysis which considers the complexity of the matters presented and the qualifications and experience of the attorney must be undertaken. Attorney Labinger has been in private practice for nearly thirty-five years, and, she represents that, since August 2007, her customary hourly rate for new clients is $290.00 per hour. (Document No. 21 at ¶¶ 2, 15). Attorney Labinger's practice specializes in civil rights and constitutional law, and she has frequently represented the Rhode Island Chapter of the American Civil Liberties Union in cases before this Court. Id. ¶¶ 4,7. As the Court noted, the particular statutes and regulatory scheme involved in this case are intricate and complex. In fact, Plaintiffs' New York attorneys were selected for their specialized expertise in the subject matter.

Attorney Labinger served as local counsel and was thus required, pursuant to L.R. Gen. 204(e), to sign and be responsible for the content of the documents filed and to attend all court hearings. While Attorney Labinger's support and advice was undoubtedly helpful to Plaintiffs' success, her fees are a bit above the mark, especially in light of the Court's approval of out-of-town rates for Plaintiffs' main counsel based upon their unique expertise. In other words, it appears that her role was primarily in the nature of serving as local counsel. Thus, the Court will award Attorney Labinger an hourly rate of $250.00 for her work. The requested rate of $150.00 per hour for Paralegal Jean Medeiros is approved.

     **2.    Number of Hours**

Next, the Court must consider the number of hours claimed by Plaintiffs' attorneys. Defendant challenges many aspects of the total hours claimed, but several specific topics were

hotly litigated, and a discussion of the Court's review and resolution of those matters is necessary.

First, Defendant claims that Plaintiffs did not prevail on some of the motions for which they seek to recover fees. (Document No. 30 at p. 18). Defendant contends that approximately forty hours of time should be eliminated because several of Plaintiffs' Motions were either denied outright or not heard by the Court; thus, Plaintiffs did not prevail on those matters. Specifically, Defendant points to the Motion for Temporary Restraining Order, Motion for Preliminary Injunction and Motion to Certify as Class. Id. at 20. Plaintiffs counter that all of the relief sought through these three motions was attained. Plaintiffs note that the relief sought in the TRO was achieved through agreement with Defendant, that the relief sought in the preliminary injunction was achieved by the Defendant's agreement to voluntarily provide the relief sought in the Settlement Order and that Plaintiffs "secured all the rights that class certification would have provided..." (Document No 32-1 at p. 16). Plaintiffs focus on the general proposition that "the work performed was inseparable from the overall result and was instrumental to the plaintiffs' success." Id. Plaintiffs argue that it is inappropriate for the Court to parse through each matter when the overall result was that they prevailed in the case. Plaintiffs' arguments carry the day. Although not every matter was specifically adjudicated by the Court, the whole of the work performed led to the end result of the parties' settlement and the Court's Order. Under the totality of the circumstances in this case, the Court need not parse out specific Motions in considering the overall fees, because, in this matter, even those Motions

that were mooted by entry of the Order played a significant role in bringing the case to its conclusion and would have been litigated but for the settlement.

Next, Defendant asserts that the hours billed are excessive. This broad argument can be broken into discrete parts. The first point raised by Defendant is that the pre-filing hours such as "outreach" and interviews with potential plaintiffs are excessive. (Document No. 30 at p. 23). Defendant also claims that many of the hours billed under this category are vague or nondescriptive. Although Defendant documents several entries provided by Attorney Cohan that fall into this category, Defendant calls Attorney LaCheen's pre-filing entries "more egregious." (Document No. 30 at p. 29). Specifically, Defendant alleges that the time Attorney LaCheen spent in May through June of 2009 on information gathering and "potential plaintiffs" (sixty hours by their calculations) should be nearly entirely eliminated. (Document No. 30 at p. 30). Plaintiffs acknowledge that the First Circuit has held that "pre-suit fees may be awarded under 42 U.S.C. § 1988 only for 'discrete' work 'that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached.'" Schneider v. Colegio de Abogados de P.R., 187 F.3d 30, 33 (1st Cir. 1999). Plaintiffs contend that the time spent interviewing potential plaintiffs falls well within this test. (Document No. 32-1 at p. 19).

The Declaration of Attorney LaCheen (Document No. 32-4) thoroughly outlines the pre-suit work she completed and its relevance to the case. Specifically, Attorney LaCheen testifies that pre-litigation activities were geared toward determining if the "problem of delays in processing applications for Food Stamps was significant and had existed for months." Id. ¶ 6. She explained that, "[t]he information indicated that the delays were not likely to be corrected

without litigation." Id. Some of the potential plaintiffs were told that "expedited processing was no longer available," others were told to fill out new applications and some were scheduled for application interviews thirty days after the date the applicant submitted their application. Attorney LaCheen's Declaration also thoroughly outlines the lengthy list of questions and issues she devised to interview potential plaintiffs. Id. ¶10. The purpose of the preliminary interviews was to determine the "nature and severity of the delays...likely cause or causes of the delay, whether the delay was statewide...[and] other factors that would shed light on the nature of the problem." Id. ¶13. Additionally, Attorney LaCheen explained how Plaintiffs' attorneys trained unpaid interns and volunteers to interview the potential litigants as a cost-saving measure. (Document No. 32-4 at ¶¶ 15-19). In short, the Court is satisfied that Plaintiffs have presented sufficient evidence that the work performed prior to filing the Complaint was both useful and the type of work that is ordinarily necessary in a suit of this nature.

The next dispute falling under the "excessive billing" umbrella is the claim that the NCLEJ used form pleadings from other cases in this matter, and thus should suffer a significant reduction in hours. (Document No. 30 at p. 24; Document No. 36). Defendant argues that the similarity of this lawsuit to the others filed before it should have led to a more streamlined, efficient resolution and fewer hours billed. Defendant's Supplemental Memorandum (Document No. 36) was devoted to its specific contention that Plaintiffs "recycled" pleadings throughout this case and have already received compensation for time preparing the pleadings in other jurisdictions. Defendant contends that the present litigation was not contentious and settled fairly quickly. Id. at 1-3. Given the short tenure of this case, the NCLEJ's previous work on the

very same issues in several other federal courts as well as the seemingly high fee request, the present dispute was the subject of significant discussion by the parties.

In their defense, Plaintiffs' legal team points out that standards for "granting of preliminary injunction...class certification, and the disposition of the merits of the claims differ from Circuit to Circuit." (Document No. 37 at p. 3). Plaintiffs note that the total time spent by NCLEJ attorneys drafting pre-suit motions was minimal.[3] For example, Plaintiffs' NCLEJ attorneys claim only 3.6 hours was devoted to the drafting, reviewing and editing of the Complaint. (Document No. 37 at p. 5). Plaintiffs also assert that 4.25 hours was devoted to the Preliminary Injunction, and 2.1 hours to the Motion for Class Certification. (Document No. 37 at pp. 5-6). Plaintiffs also argue that they do not use cookie-cutter pleadings. (Document No. 37 at p. 8). Plaintiffs point out that a significant portion of their billing in most of their public benefits cases are pre-filing. (Document No. 37 at p. 9). Plaintiffs also note that the settlement agreement in this matter was subject to intense and time-consuming negotiation and drafting. (Document No. 32-1 at pp. 22-23).

Both sides make valid points. First, Plaintiffs' NCLEJ attorneys hold themselves out as experts, yet when defending the hours billed, they point to the fact-intensive and state-law

---

[3] Plaintiffs' Reply Memorandum (Document No. 37) addresses the hours billed by NCLEJ attorneys in its claim. However, the total of the hours billed by Plaintiffs necessarily includes those hours billed by local counsel, Attorney Labinger, on the very same issues. The exclusion of Attorney Labinger's time entries on these matters leads to a somewhat distorted picture of the hours billed. While the Court recognizes that Defendant essentially accused the NCLEJ of "recycling" pleadings, and did not include any hours billed by Attorney Labinger, a credible discussion of the hours billed by Plaintiff cannot be had with the exclusion of Attorney Labinger's time. The Court has conducted a rigorous review of the time entries and notes that Attorney Labinger's contributions to the drafting of the Complaint and the Motion for Injunction appear significant. Attorney Labinger's time entries on April 24, June 24, July 3, and July 4, 2009 concerning the Preliminary Injunction total roughly 6.45 hours. Her entries on April 20, June 21, July 3, July 7, 2009 concerning drafting the complaint total roughly 3.15 hours. (See Document No. 21-2). While these hours are not substantial in the big picture, they are relevant in the context of the hours Plaintiffs' attorneys billed on these discrete matters, and should be reviewed in the context of a request for fees to be paid by taxpayer dollars.

intensive nature of the case. There is certainly merit in their argument, but there must also be a middle ground. While the Court is not convinced that the Plaintiffs' NCLEJ attorneys simply copied old pleadings by adding the Rhode Island docket and header information on a previously-generated document, the Court must also hold Plaintiffs' attorneys accountable for convincing the Court that they are experts in this field. As experts, the attorneys should be uniquely skilled at plaintiff identification and should have developed a streamlined way of developing and processing facts and bringing to life a Complaint in a claim concerning food stamp delays. In sum, Plaintiffs' attorneys' experience must be put to efficient use. To account for the experience they have amassed and because the time records suggest there was some duplication and excessive entries, the Court is recommending that the requested time for all attorneys be reduced by 10%.

The final issue the Court will address is the Defendant's claim that Attorney Mannix's time should be reduced or eliminated entirely for failure to seek and obtain pro hac vice admission in the Court. (Document No. 30 at pp. 32-33). Defendant does not point to any precedent for eliminating work for an attorney that has not been granted pro hac vice status, nor does Defendant elaborate on that argument. Defendant does raise general concerns about the nature of the work performed by Attorney Mannix and its potentially duplicative nature. The Court thoroughly reviewed the time entries for Attorney Mannix's 18.4 hours of billed time and agrees that much of the work performed by Attorney Mannix concerns matters that appear duplicative such as "review" of various documents and emails (entries dated April 29; May 20, 21 and 27; June 9, 11, 18 and 22; July 1, 2 and 16; August 3 and 6) as well as interoffice

meetings (May 26 and 29; June 2, 10 and 30; July 7, 9, 14 and 16; August 3 and 4; September 1). (Document No. 22-3). The Court concludes that Attorney Mannix's time is duplicative after a careful review of the totality of the fees claimed and the entries submitted and while being mindful that "the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297-298 (1st Cir. 2001). The use of a team of attorneys in this matter was not unreasonable, and thus some interoffice meetings and discussions are inevitable. There is, however, a point at which this can amount to duplication, and many of the entries pertaining to Attorney Mannix's time cross that line. Accordingly, the Court is recommending that her time be reduced by 50%. In sum therefore, the final calculation as to attorneys' fees is as follows:

|  | Rate | Hours | Award |
| --- | --- | --- | --- |
| Marc Cohan | $375.00 | 76.90 | $ 27,525.00[4] |
| Mary Mannix | $375.00 | 9.20 | $ 3,450.00 |
| Caroline LaCheen | $350.00 | 176.60 | $ 55,685.00 |
| Lynette Labinger | $250.00 | 106.20 | $ 26,550.00 |
| Jean Medeiros | $150.00 | 4.20 | $ 630.00 |

The sum of the fees is $113,840.00 less the 10% reduction of $11,384.00 leads to the total fee award of $102,456.00.

---

[4] Attorneys LaCheen and Cohan indicate that 41.56 hours of their collective time was for travel and submit a reduced request of 50% of their normal rate for those hours. (See Document No. 20 at p. 3). The Court finds that a 50% reduction in hourly rate is reasonable, and the total amount awarded to Attorneys Cohan and LaCheen are reduced according to the numbers presented to the Court.

## II. The Award of Costs

Federal Rule of Civil Procedure 54(d) provides the basis for awarding costs of litigation. That rule states that, "costs...should be allowed to the prevailing party," "[u]nless a federal statute, these rules, or a court order provides otherwise." The expenses allowed as costs are set forth in 28 U.S.C. § 1920. In addition, 28 U.S.C. § 1924 and LR Cv 54 require the party seeking costs to document their requests with an affidavit and a memorandum of law specifying that the costs were actually performed and necessary to the litigation. Finally, LR Cv 54(e) provides that if the parties are unable to resolve objections to the bill of costs, "the Court will make a final determination with respect to the taxation of costs." The Court has reviewed the costs sought by Plaintiffs and has concluded that Plaintiffs may recover the total amount requested, $2,401.44.

**Conclusion**

For the reasons discussed above, I recommend that Plaintiffs' Motion for Award of Attorneys Fees and Costs (Document No. 20) be GRANTED in part and DENIED in part. In particular, I recommend Plaintiffs be awarded $102,456.00 in attorneys' fees and $2,401.44 in costs.[5]

---

[5] It is unfortunate in this difficult fiscal environment that I am compelled by the law to recommend such a substantial expenditure of public money. However, if the State had responded sooner and more definitively to concerns about delays expressed by advocates for those in need, it may have been able to avoid this litigation and the attendant expenses. For instance, an RILS employee testified in her Declaration that she had "numerous conversations" with supervisors in the State food stamp program about delays dating back to 2008 to no avail. (Document No. 3-3). Also, an RILS attorney testified in her Declaration that she wrote to DHS counsel on December 10, 2008 about food stamp application processing delays and her hope that "litigation will not be necessary" for DHS to address the problem. (Document Nos. 3-3 at p. 7 and 32-2 at ¶ 3). Although DHS counsel promptly acknowledged the letter and indicated that she would look into the concerns and respond, the RILS attorney testified that, as of February 9, 2010, she had "heard nothing further from her or other DHS legal counsel thereafter." (Document Nos. 3-3 at p. 8 and 32-2 at ¶ 3). Although hindsight is necessarily 20/20, a prompt response and/or shifting of resources to address the application backlog may have averted this lawsuit and the ultimate award of fees under § 1988.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond  
LINCOLN D. ALMOND  
United States Magistrate Judge  
March 31, 2011